RS

IN THE CIRCUIT COURT FOR <u>Prince George's County (CC)</u>

City/County

## CIVIL – NON-DOMESTIC CASE INFORMATION REPORT

### DIRECTIONS

***Plaintiff:*** This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Justice of the Supreme Court of Maryland pursuant to Rule 2-111(a). ***Defendant:*** You must file an Information Report as required by Rule 2-323(h).

***THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING***

**FORM FILED BY:** ☒ PLAINTIFF ☐ DEFENDANT      CASE NUMBER __C-16-CV-26-001330__
(Clerk to insert)

**CASE NAME:** <u>KEISHA HUDSON</u>           VS.     <u>PRINCE GEORGE'S COUNTY, MD</u>
　　　　　　　　Plaintiff　　　　　　　　　　　　　　　　　　Defendant

**PARTY'S NAME:** _____       PHONE: _____

**PARTY'S ADDRESS:** _____

**PARTY'S E-MAIL:** _____

**If represented by an attorney:**

**PARTY'S ATTORNEY'S NAME:** <u>Jordan Howlette</u>       PHONE: <u>(202) 921-6005</u>

**PARTY'S ATTORNEY'S ADDRESS:** <u>16701 Melford Blvd., Suite 400, Bowie, Maryland 20715</u>

**PARTY'S ATTORNEY'S E-MAIL:** <u>jordan@justlyprudent.com</u>

**JURY DEMAND?** ☒ Yes ☐ No

**RELATED CASE PENDING?** ☐ Yes ☒ No If yes, Case #(s), if known: _____

**ANTICIPATED LENGTH OF TRIAL?:** _____ hours <u>3</u> days

### PLEADING TYPE

**New Case:** ☒ Original   ☐ Administrative Appeal   ☐ Appeal

**Existing Case:** ☐ Post-Judgment   ☐ Amendment

*If filing in an existing case,* skip Case Category/Subcategory section – go to Relief section.

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY (Check one box.)

**TORTS**
- ☐ Asbestos
- ☐ Assault and Battery
- ☐ Business and Commercial
- ☐ Conspiracy
- ☐ Conversion
- ☐ Defamation
- ☐ False Arrest/Imprisonment
- ☐ Fraud
- ☐ Lead Paint – DOB of Youngest Plt: _____
- ☐ Loss of Consortium
- ☐ Malicious Prosecution
- ☐ Malpractice-Medical
- ☐ Malpractice-Professional
- ☐ Misrepresentation
- ☐ Motor Tort
- ☐ Negligence
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability
- ☐ Specific Performance
- ☐ Toxic Tort
- ☐ Trespass
- ☐ Wrongful Death

**CONTRACT**
- ☐ Asbestos
- ☐ Breach
- ☐ Business and Commercial
- ☐ Confessed Judgment (Cont'd)
- ☐ Construction
- ☐ Debt
- ☐ Fraud

- ☐ Government
- ☐ Insurance
- ☐ Product Liability

**PROPERTY**
- ☐ Adverse Possession
- ☐ Breach of Lease
- ☐ Detinue
- ☐ Distress/Distrain
- ☐ Ejectment
- ☐ Forcible Entry/Detainer
- ☐ Foreclosure
  - ☐ Commercial
  - ☐ Residential
  - ☐ Currency or Vehicle
  - ☐ Deed of Trust
  - ☐ Land Installments
  - ☐ Lien
  - ☐ Mortgage
  - ☐ Right of Redemption
  - ☐ Statement Condo
- ☐ Forfeiture of Property/ Personal Item
- ☐ Fraudulent Conveyance
- ☐ Landlord-Tenant
- ☐ Lis Pendens
- ☐ Mechanic's Lien
- ☐ Ownership
- ☐ Partition/Sale in Lieu
- ☐ Quiet Title
- ☐ Rent Escrow
- ☐ Return of Seized Property
- ☐ Right of Redemption
- ☐ Tenant Holding Over

**PUBLIC LAW**
- ☐ Attorney Grievance
- ☐ Bond Forfeiture Remission
- ☐ Civil Rights
- ☐ County/Mncpl Code/Ord
- ☐ Election Law
- ☐ Eminent Domain/Condemn.
- ☐ Environment
- ☐ Error Coram Nobis
- ☐ Habeas Corpus
- ☐ Mandamus
- ☐ Prisoner Rights
- ☐ Public Info. Act Records
- ☐ Quarantine/Isolation
- ☐ Writ of Certiorari

**EMPLOYMENT**
- ☐ ADA
- ☐ Conspiracy
- ☒ EEO/HR
- ☐ FLSA
- ☐ FMLA
- ☐ Worker's Compensation
- ☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
- ☐ Assumption of Jurisdiction
- ☐ Authorized Sale
- ☐ Attorney Appointment
- ☐ Body Attachment Issuance
- ☐ Commission Issuance

- ☐ Constructive Trust
- ☐ Contempt
- ☐ Deposition Notice
- ☐ Dist Ct Mtn Appeal
- ☐ Financial
- ☐ Grand Jury/Petit Jury
- ☐ Miscellaneous
- ☐ Perpetuate Testimony/Evidence
- ☐ Prod. of Documents Req.
- ☐ Receivership
- ☐ Sentence Transfer
- ☐ Set Aside Deed
- ☐ Special Adm. – Atty
- ☐ Subpoena Issue/Quash
- ☐ Trust Established
- ☐ Trustee Substitution/Removal
- ☐ Witness Appearance-Compel

**PEACE ORDER**
- ☐ Peace Order

**EQUITY**
- ☐ Declaratory Judgment
- ☐ Equitable Relief
- ☐ Injunctive Relief
- ☐ Mandamus

**OTHER**
- ☐ Accounting
- ☐ Friendly Suit
- ☐ Grantor in Possession
- ☐ Maryland Insurance Administration
- ☐ Miscellaneous
- ☐ Specific Transaction
- ☐ Structured Settlements

CC-DCM-002 (Rev. 09/2025)          Page 1 of 3

<table>
<tr><td colspan="4"><strong>IF NEW OR EXISTING CASE: RELIEF (Check All that Apply)</strong></td></tr>
</table>

| | | | |
|---|---|---|---|
| ☐ Abatement | ☐ Earnings Withholding | ☐ Judgment-Default | ☐ Reinstatement of Employment |
| ☐ Administrative Action | ☐ Enrollment | ☐ Judgment-Interest | ☐ Return of Property |
| ☐ Appointment of Receiver | ☐ Expungement | ☐ Judgment-Summary | ☐ Sale of Property |
| ☐ Arbitration | ☐ Financial Exploitation | ☒ Liability | ☐ Specific Performance |
| ☐ Asset Determination | ☐ Findings of Fact | ☐ Oral Examination | ☐ Writ-Error Coram Nobis |
| ☐ Attachment b/f Judgment | ☐ Foreclosure | ☐ Order | ☐ Writ-Execution |
| ☐ Cease & Desist Order | ☒ Injunction | ☐ Ownership of Property | ☐ Writ-Garnish Property |
| ☐ Condemn Bldg | ☐ Judgment-Affidavit | ☐ Partition of Property | ☐ Writ-Garnish Wages |
| ☐ Contempt | ☐ Judgment-Attorney Fees | ☐ Peace Order | ☐ Writ-Habeas Corpus |
| ☐ Court Costs/Fees | ☐ Judgment-Confessed | ☐ Possession | ☐ Writ-Mandamus |
| ☒ Damages-Compensatory | ☐ Judgment-Consent | ☐ Production of Records | ☐ Writ-Possession |
| ☒ Damages-Punitive | ☐ Judgment-Declaratory | ☐ Quarantine/Isolation Order | |

*If you indicated **Liability** above,* mark one of the following. This information is <u>not</u> an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded.     ☐ Liability is not conceded, but is not seriously in dispute.     ☒ Liability is seriously in dispute.

<table>
<tr><td colspan="4"><strong>MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)</strong></td></tr>
</table>

☐ Under $10,000     ☐ $10,000 - $30,000     ☐ $30,000 - $100,000     ☒ Over $100,000

☐ Medical Bills $_____     ☐ Wage Loss $_____     ☐ Property Damages $_____

<table>
<tr><td><strong>ALTERNATIVE DISPUTE RESOLUTION INFORMATION</strong></td></tr>
</table>

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)

A. Mediation     ☒ Yes ☐ No     C. Settlement Conference     ☒ Yes ☐ No
B. Arbitration     ☐ Yes ☒ No     D. Neutral Evaluation     ☐ Yes ☒ No

<table>
<tr><td><strong>SPECIAL REQUIREMENTS</strong></td></tr>
</table>

☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

<table>
<tr><td><strong>ESTIMATED LENGTH OF TRIAL</strong></td></tr>
</table>

*With the exception of Baltimore County and Baltimore City, please fill in the estimated **LENGTH OF TRIAL**.*

***(Case will be tracked accordingly)***

☐ 1/2 day of trial or less     ☒ 3 days of trial time
☐ 1 day of trial time     ☐ More than 3 days of trial time
☐ 2 days of trial time

<table>
<tr><td><strong>BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM</strong></td></tr>
</table>

***For all jurisdictions,*** *if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited** - Trial within 7 months of     ☐ **Standard** - Trial within 18 months of
Defendant's response          Defendant's response

EMERGENCY RELIEF REQUESTED

| COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR) | |
|---|---|

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES* under *Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

❏ **Expedited** - Trial within 7 months of Defendant's response      ❏ **Standard** - Trial within 18 months of Defendant's response

***IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.***

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | |
|---|---|
| ❏ Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ❏ Civil-Short | Trial 210 days from first answer. |
| ❏ Civil-Standard | Trial 360 days from first answer. |
| ❏ Custom | Scheduling order entered by individual judge. |
| ❏ Asbestos | Special scheduling order. |
| ❏ Lead Paint | Fill in: Birth Date of youngest plaintiff _____. |
| ❏ Tax Sale Foreclosures | Special scheduling order. |
| ❏ Mortgage Foreclosures | No scheduling order. |

### CIRCUIT COURT FOR BALTIMORE COUNTY

| | |
|---|---|
| ❏ Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ❏ Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ❏ Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ❏ Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

March 6, 2026
_____
Date

16701 Melford Blvd., Suite 400
_____
Street Address

| Bowie | MD | 20715 |
|---|---|---|
| City | State | Zip Code |

*Jordan D. Howlette* 2006110003
_____
Signature of Attorney/Party      Attorney Number

Jordan D. Howlette
_____
Printed Name

jordan@justlyprudent.com
_____
E-mail

**To:**   PRINCE GEORGE'S COUNTY, MD
C/O OFFICE OF LAW
1301 MCCORMICK DRIVE, SUITE 4100
LARGO, MD 20774

|  |  |
|---|---|
| **Case Number:** | **C-16-CV-26-001330** |
| **Other Reference Number(s):** |  |
| **Child Support Enforcement Number:** |  |

**KEISHA HUDSON VS. PRINCE GEORGE'S COUNTY, MD, ET AL.**

Issue Date: 03/09/2026

## WRIT OF SUMMONS

You are summoned to file a written response by pleading or motion, within 30 days after service of this summons upon you, in this court, to the attached complaint filed by:

KEISHA HUDSON
c/o Justly Prudent
16701 Melford Blvd, Suite 400
Bowie MD  20715

This summons is effective for service only if served within 60 days after the date it is issued.

Mahasin El Amin #845
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.
It is your responsibility to ensure that the court has your current and correct mailing address in order to receive subsequent filings and notice in this case.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.

Keisha Hudson vs. Prince George's County, MD, et al.

**Circuit Court for Prince George's County**
Case Number: C-16-CV-26-001330

4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

**Keisha Hudson vs. Prince George's County, MD, et al.**

**Circuit Court for Prince George's County**
Case Number: C-16-CV-26-001330

## SHERIFF'S RETURN
### (please print)

To: PRINCE GEORGE'S COUNTY, MD

_____ ID# _____ of the _____
Serving Sheriff's Name

County Sheriff's office present to the court that I:

    (1) Served _____
                                                   Name of person served

on _____ at _____
               Date of service                                    Location of service

_____ by _____ with the following:
                                        Manner of service

- ☐ Summons
- ☐ Complaint
- ☐ Motions
- ☐ Petition and Show Cause Order
- ☐ Other _____
               Please specify

- ☐ Counter-Complaint
- ☐ Domestic Case Information Report
- ☐ Financial Statement
- ☐ Interrogatories

    (2) Was unable to serve because:

- ☐ Moved left no forwarding address
- ☐ Address not in jurisdiction

- ☐ No such address
- ☐ Other _____
               Please specify

Sheriff fee: $                     ☐ waived by

_____       _____
       Date                Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).



**CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND**

14735 Main Street, Upper Marlboro, Maryland, 20772
Circuit Court Clerks: 301-952-3318   Calendar Management: 301-952-3850

**To:**   TAMARA JOHNSON
C/O OFFICE OF LAW
1301 MCCORMICK DRIVE, SUITE 4100
LARGO, MD 20774

| | |
|---:|:---|
| **Case Number:** | **C-16-CV-26-001330** |
| **Other Reference Number(s):** | |
| **Child Support Enforcement Number:** | |

**KEISHA HUDSON VS. PRINCE GEORGE'S COUNTY, MD, ET AL.**

Issue Date: 03/09/2026

## WRIT OF SUMMONS

You are summoned to file a written response by pleading or motion, within 30 days after service of this summons upon you, in this court, to the attached complaint filed by:

KEISHA HUDSON
c/o Justly Prudent
16701 Melford Blvd, Suite 400
Bowie MD  20715

This summons is effective for service only if served within 60 days after the date it is issued.

Mahasin El Amin #845
Clerk of the Circuit Court

To the person summoned:

Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.

Personal attendance in court on the day named is NOT required.

It is your responsibility to ensure that the court has your current and correct mailing address in order to receive subsequent filings and notice in this case.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.

Keisha Hudson vs. Prince George's County, MD, et al.

**Circuit Court for Prince George's County**
Case Number: C-16-CV-26-001330

4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

Keisha Hudson vs. Prince George's County, MD, et al.

**Circuit Court for Prince George's County**
Case Number: C-16-CV-26-001330

## SHERIFF'S RETURN
### (please print)

To: TAMARA JOHNSON

_____ ID# _____ of the _____
Serving Sheriff's Name

County Sheriff's office present to the court that I:

(1) Served _____
Name of person served

on _____ at _____
Date of service                          Location of service

_____ by _____ with the following:
Manner of service

☐ Summons                    ☐ Counter-Complaint

☐ Complaint                   ☐ Domestic Case Information Report

☐ Motions                     ☐ Financial Statement

☐ Petition and Show Cause Order    ☐ Interrogatories
☐ Other _____
Please specify

(2) Was unable to serve because:

☐ Moved left no forwarding address    ☐ No such address

☐ Address not in jurisdiction          ☐ Other _____
Please specify

Sheriff fee: $                          ☐ waived by

_____    _____
Date                          Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).



**CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND**

14735 Main Street, Upper Marlboro, Maryland, 20772

Circuit Court Clerks: 301-952-3318   Calendar Management: 301-952-3850

**To:** AVERY JOHNSON
C/O OFFICE OF LAW
1301 MCCORMICK DRIVE, SUITE 4100
LARGO, MD 20774

| | |
|---|---|
| **Case Number:** | **C-16-CV-26-001330** |
| **Other Reference Number(s):** | |
| **Child Support Enforcement Number:** | |

**KEISHA HUDSON VS. PRINCE GEORGE'S COUNTY, MD, ET AL.**

Issue Date: 03/09/2026

## WRIT OF SUMMONS

You are summoned to file a written response by pleading or motion, within 30 days after service of this summons upon you, in this court, to the attached complaint filed by:

KEISHA HUDSON
c/o Justly Prudent
16701 Melford Blvd, Suite 400
Bowie MD  20715

This summons is effective for service only if served within 60 days after the date it is issued.

Mahasin El Amin #845
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.
It is your responsibility to ensure that the court has your current and correct mailing address in order to receive subsequent filings and notice in this case.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.

**Keisha Hudson vs. Prince George's County, MD, et al.**

**Circuit Court for Prince George's County**
Case Number: C-16-CV-26-001330

4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

Keisha Hudson vs. Prince George's County, MD, et al.

**Circuit Court for Prince George's County**
Case Number: C-16-CV-26-001330

## SHERIFF'S RETURN
### (please print)

To: AVERY JOHNSON

_____ ID# _____ of the _____
Serving Sheriff's Name

County Sheriff's office present to the court that I:

    (1) Served _____
                                                 Name of person served

on _____ at _____
          Date of service                              Location of service

_____ by _____ with the following:
                                               Manner of service

☐ Summons                              ☐ Counter-Complaint

☐ Complaint                           ☐ Domestic Case Information Report

☐ Motions                                ☐ Financial Statement

☐ Petition and Show Cause Order        ☐ Interrogatories
☐ Other _____
          Please specify

    (2) Was unable to serve because:

☐ Moved left no forwarding address        ☐ No such address

☐ Address not in jurisdiction             ☐ Other _____
                                                  Please specify

Sheriff fee: $                                ☐ waived by

_____     _____
          Date                      Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

RS

IN THE CIRCUIT COURT FOR Prince George's County (CC)

City/County

## CIVIL – NON-DOMESTIC CASE INFORMATION REPORT

### DIRECTIONS

***Plaintiff:*** This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Justice of the Supreme Court of Maryland pursuant to Rule 2-111(a).
***Defendant:*** You must file an Information Report as required by Rule 2-323(h).
***THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING***

**FORM FILED BY:** ☒ PLAINTIFF ☐ DEFENDANT          CASE NUMBER C-16-CV-26-001330
(Clerk to insert)

**CASE NAME:** KEISHA HUDSON          VS.          PRINCE GEORGE'S COUNTY, MD

Plaintiff          Defendant

**PARTY'S NAME:**_____          **PHONE:**_____

**PARTY'S ADDRESS:**_____

**PARTY'S E-MAIL:**_____

**If represented by an attorney:**

**PARTY'S ATTORNEY'S NAME:** Jordan Howlette          **PHONE:** (202) 921-6005

**PARTY'S ATTORNEY'S ADDRESS:** 16701 Melford Blvd., Suite 400, Bowie, Maryland 20715

**PARTY'S ATTORNEY'S E-MAIL:** jordan@justlyprudent.com

**JURY DEMAND?** ☒ Yes ☐ No

**RELATED CASE PENDING?** ☐ Yes ☒ No If yes, Case #(s), if known:_____

**ANTICIPATED LENGTH OF TRIAL?:**_____ hours 3 _____ days

### PLEADING TYPE

**New Case:**   ☒ Original   ☐ Administrative Appeal   ☐ Appeal
**Existing Case:** ☐ Post-Judgment   ☐ Amendment
*If filing in an existing case,* skip Case Category/Subcategory section – go to Relief section.

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)

**TORTS**
☐ Asbestos
☐ Assault and Battery
☐ Business and Commercial
☐ Child Victims Act
☐ Conspiracy
☐ Conversion
☐ Defamation
☐ False Arrest/Imprisonment
☐ Fraud
☐ Lead Paint – DOB of Youngest Plt:_____
☐ Loss of Consortium
☐ Malicious Prosecution
☐ Malpractice-Medical
☐ Malpractice-Professional
☐ Misrepresentation
☐ Motor Tort
☐ Negligence
☐ Nuisance
☐ Premises Liability
☐ Product Liability
☐ Specific Performance
☐ Toxic Tort
☐ Trespass
☐ Wrongful Death

**CONTRACT**
☐ Asbestos
☐ Breach
☐ Business and Commercial
☐ Confessed Judgment (Cont'd)
☐ Construction
☐ Debt

☐ Fraud
☐ Government
☐ Insurance
☐ Product Liability

**PROPERTY**
☐ Adverse Possession
☐ Breach of Lease
☐ Detinue
☐ Distress/Distrain
☐ Ejectment
☐ Forcible Entry/Detainer
☐ Foreclosure
  ☐ Commercial
  ☐ Residential
  ☐ Currency or Vehicle
  ☐ Deed of Trust
  ☐ Land Installments
  ☐ Lien
  ☐ Mortgage
  ☐ Right of Redemption
  ☐ Statement Condo
☐ Forfeiture of Property/ Personal Item
☐ Fraudulent Conveyance
☐ Landlord-Tenant
☐ Lis Pendens
☐ Mechanic's Lien
☐ Ownership
☐ Partition/Sale in Lieu
☐ Quiet Title
☐ Rent Escrow
☐ Return of Seized Property
☐ Right of Redemption
☐ Tenant Holding Over

**PUBLIC LAW**
☐ Attorney Grievance
☐ Bond Forfeiture Remission
☐ Civil Rights
☐ County/Mncpl Code/Ord
☐ Election Law
☐ Eminent Domain/Condemn.
☐ Environment
☐ Error Coram Nobis
☐ Habeas Corpus
☐ Mandamus
☐ Prisoner Rights
☐ Public Info. Act Records
☐ Quarantine/Isolation
☐ Writ of Certiorari

**EMPLOYMENT**
☐ ADA
☐ Conspiracy
☒ EEO/HR
☐ FLSA
☐ FMLA
☐ Worker's Compensation
☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
☐ Assumption of Jurisdiction
☐ Authorized Sale
☐ Attorney Appointment
☐ Body Attachment Issuance
☐ Commission Issuance

☐ Constructive Trust
☐ Contempt
☐ Deposition Notice
☐ Dist Ct Mtn Appeal
☐ Financial
☐ Grand Jury/Petit Jury
☐ Miscellaneous
☐ Perpetuate Testimony/Evidence
☐ Prod. of Documents Req.
☐ Receivership
☐ Sentence Transfer
☐ Set Aside Deed
☐ Special Adm. – Atty
☐ Subpoena Issue/Quash
☐ Trust Established
☐ Trustee Substitution/Removal
☐ Witness Appearance-Compel

**PEACE ORDER**
☐ Peace Order

**EQUITY**
☐ Declaratory Judgment
☐ Equitable Relief
☐ Injunctive Relief
☐ Mandamus

**OTHER**
☐ Accounting
☐ Friendly Suit
☐ Grantor in Possession
☐ Maryland Insurance Administration
☐ Miscellaneous
☐ Specific Transaction
☐ Structured Settlements

**CC-DCM-002** (Rev. 03/2026)          Page 1 of 3

## IF NEW OR EXISTING CASE: RELIEF (Check All that Apply)

- ☐ Abatement
- ☐ Administrative Action
- ☐ Appointment of Receiver
- ☐ Arbitration
- ☐ Asset Determination
- ☐ Attachment b/f Judgment
- ☐ Cease & Desist Order
- ☐ Condemn Bldg
- ☐ Contempt
- ☐ Court Costs/Fees
- ☒ Damages-Compensatory
- ☒ Damages-Punitive

- ☐ Earnings Withholding
- ☐ Enrollment
- ☐ Expungement
- ☐ Financial Exploitation
- ☐ Findings of Fact
- ☐ Foreclosure
- ☒ Injunction
- ☐ Judgment-Affidavit
- ☐ Judgment-Attorney Fees
- ☐ Judgment-Confessed
- ☐ Judgment-Consent
- ☐ Judgment-Declaratory

- ☐ Judgment-Default
- ☐ Judgment-Interest
- ☐ Judgment-Summary
- ☒ Liability
- ☐ Oral Examination
- ☐ Order
- ☐ Ownership of Property
- ☐ Partition of Property
- ☐ Peace Order
- ☐ Possession
- ☐ Production of Records
- ☐ Quarantine/Isolation Order

- ☐ Reinstatement of Employment
- ☐ Return of Property
- ☐ Sale of Property
- ☐ Specific Performance
- ☐ Writ-Error Coram Nobis
- ☐ Writ-Execution
- ☐ Writ-Garnish Property
- ☐ Writ-Garnish Wages
- ☐ Writ-Habeas Corpus
- ☐ Writ-Mandamus
- ☐ Writ-Possession

*If you indicated **Liability** above,* mark one of the following. This information is <u>not</u> an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded.     ☐ Liability is not conceded, but is not seriously in dispute.     ☒ Liability is seriously in dispute.

## MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)

☐ Under $10,000      ☐ $10,000 - $30,000      ☐ $30,000 - $100,000      ☒ Over $100,000

☐ Medical Bills $_____      ☐ Wage Loss $_____      ☐ Property Damages $_____

## ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)

| | | |
|---|---|---|
| A. Mediation ☒ Yes ☐ No | C. Settlement Conference ☐ Yes ☒ No |
| B. Arbitration ☐ Yes ☒ No | D. Neutral Evaluation ☐ Yes ☒ No |

## SPECIAL REQUIREMENTS

☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

## ESTIMATED LENGTH OF TRIAL

*With the exception of Baltimore County and Baltimore City, please fill in the estimated **LENGTH OF TRIAL.***

***(Case will be tracked accordingly)***

☐ 1/2 day of trial or less          ☒ 3 days of trial time
☐ 1 day of trial time               ☐ More than 3 days of trial time
☐ 2 days of trial time

## BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

***For all jurisdictions,*** *if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited** - Trial within 7 months of          ☐ **Standard** - Trial within 18 months of
Defendant's response                                Defendant's response

EMERGENCY RELIEF REQUESTED

<table>
<tr><td colspan="2" align="center"><strong>COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE<br>MANAGEMENT PROGRAM (ASTAR)</strong></td></tr>
</table>

| | |
|---|---|

**COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE
MANAGEMENT PROGRAM (ASTAR)**

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under
Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

❑ **Expedited** - Trial within 7 months of          ❑ **Standard** - Trial within 18 months of
Defendant's response                                    Defendant's response

*IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY OR BALTIMORE COUNTY,
PLEASE FILL OUT THE APPROPRIATE BOX BELOW.*

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | |
|---|---|
| ❑ Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ❑ Civil-Short | Trial 210 days from first answer. |
| ❑ Civil-Standard | Trial 360 days from first answer. |
| ❑ Custom | Scheduling order entered by individual judge. |
| ❑ Asbestos | Special scheduling order. |
| ❑ Lead Paint | Fill in: Birth Date of youngest plaintiff _____ . |
| ❑ Tax Sale Foreclosures | Special scheduling order. |
| ❑ Mortgage Foreclosures | No scheduling order. |

### CIRCUIT COURT FOR BALTIMORE COUNTY

| | |
|---|---|
| ❑ Expedited<br>(Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ❑ Standard<br>(Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ❑ Extended Standard<br>(Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ❑ Complex<br>(Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

March 9, 2026
_____
Date

16701 Melford Blvd., Suite 400
_____
Street Address

Bowie          MD          20715
_____
City          State          Zip Code

*Jordan D. Howlette*          2006110003
_____
Signature of Attorney/Party          Attorney Number

Jordan D. Howlette
_____
Printed Name

jordan@justlyprudent.com
_____
E-mail



Circuit Court Clerks: 301-952-3318   Calendar
Management: 301-952-3850

**To:** JORDAN DAVID HOWLETTE
JD HOWLETTE LAW
1140 3RD STREET NE
STE 2180
WASHINGTON, DC 20002

**Case Number:** **C-16-CV-26-001330**
**Other Reference Number(s):**

**KEISHA HUDSON VS. PRINCE GEORGE'S COUNTY, MD, ET AL.**

Date: 03/09/2026

# MDEC DEFICIENCY NOTICE
### (Md. Rules Title 20)

To **Jordan Howlette:** You have a deficiency in your filing. **Pursuant to Maryland Rule 20-203(d)(3) the court will strike the submission unless the deficiency is corrected or the deficient submission is withdrawn within 14 days or the court orders otherwise. Please make the correction(s) indicated below and refile or withdraw the submission within 14 days, making no other amendments, modifications, or changes to the submission except to correct the deficiency. The time to file any responsive submission shall run from the date that the correct submission is filed. The deficient submission file name(s) and date of filing are:  Case Information 03/09/2026.**

☐ In any one case multiple submissions (including proposed orders) must be submitted in the same envelope as separate PDF files. Please resubmit the filings as separate submissions in the same envelope. (See Rule 20-201(e).) *Does not apply to L & T bulk filing.*

☐ The submission is illegible or scanned with an incorrect orientation (e.g., upside down, sideways, blurry, and blank pages).

☐ The electronic file names must relate to the title of the submission. The electronic file name must state whether all or part of the submission is to be sealed or shielded pursuant to Rule 20-201.1. (e.g., RESTRICTED DOCUMENT-Request to Shield Denied or Dismissed Protective Order Records) (See Rule 20-201(i).) If an exhibit to a submission is filed, the exhibit and the electronic file name should accurately refer to the submission to which they relate. (e.g., Ex 1 Pl MSJ) When the exhibit is an affidavit or other testimony, the file name must identify the affiant or witness (e.g., Affidavit of John Doe).

☐ The exhibit(s) are not identified using the drop-down menu provided.

☐ The submission is not permitted to be filed electronically. (See Rule 20-106(c)(2).)

☐ The submission does not include the filer's signature (the signer's typewritten name accompanied by (1) a visual image of the signer's handwritten signature or (2) by the symbol /s/) as required by Rule(s) 20-107(a)(1) and 20-101(t).

☐ The submission does not have the filer's address, e-mail address, telephone number, or the attorney's identifying Attorney Number registered with the Attorney Information System as required by Rule 20-107(a)(2).

☐ You attempted to enter your appearance in the case as attorney for the victim or victim's representative without using form MDJ-009-Notice of Entry of Appearance by Attorney for Victim or Victim's Representative. (See Rule 20-103(b)(1)(A).)

☐ The submission requires a signature under oath, affirmation, or with verification and is not hand-signed and scanned or affixed with the signer's digital signature. (See Rule(s) 20-107(d)(1) and 20-101(e).)

☐ CONSOLIDATED CASES: The submission was filed into a subcase. Where a judge has issued an order consolidated cases and designates a lead case, all subsequent submissions must be filed in the lead case.

☐ The proposed order was not submitted as a separate document, identified as a proposed order, or identified as relating to the motion or other request for court action to which the order pertains. (See Rule 20-201(j).) *This does not apply if submitted on a combined motion & order form issued by the Judiciary.*

☐ The filing code was incorrect, and the clerk's office was unable to determine the correct code.

☐ The State Court Administrator requirements for requesting sheriff, constable or certified mail service in the District Court have not been met (e.g., includes improper fee multiplier).

☐ The submission was filed by a registered user on behalf of a non-registered user in violation of the policy published by the State Court Administrator.

☐ The party's name is not an identical reference to the name of each party (spelling, first name, middle name(s), last name(s), initial(s), and other identifiers) as required wherever that party's name referred to in writing/electronically, including but not limited to: in the pleading or other submission, party field, or File and Serve.

☐ The filing location is incorrect.

☐ The submission does not relate to the case in which it was filed.

☐ (District Court only) WARRANT OF RESTITUTION: The petitioner must submit both the front of the Petition for Warrant of Restitution and the second page which contains important notices to defendant.

☐ (District Court only) The submission must be submitted on the most recent version of a form approved by the Chief Judge of the District Court.

☒ Other - Outdated form. You can find the new version (3/2026) at mdcourts.gov or copy and paste the following link: www.mdcourts.gov/sites/default/files/court-forms/courtforms/circuit/ccdcm002.pdf/ccdcm002.pdf

**To resubmit the submission(s), please re-file in a different envelope within 14 days of this notice and under comments state that you are filing to correct the Deficiency Notice filed on 03/09/2026 with envelope 25435515.**

Mahasin El Amin
Clerk of the Circuit Court

**NOTE:** You must submit a motion and have it granted by a judge to receive a refund of any fees associated with the filing.

## ORDER STRIKING DEFICIENT SUBMISSION(S)

The above deficiency notice has not been corrected within the required 14 days. The court has not issued an order related to the deficiency. Per Rule 20-203(d)(3), the deficient submission(s) is/are stricken.

_____        _____
Date                          Judge

cc:     Keisha Hudson

        Jordan David Howlette

IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND
14735 Main Street, Upper Marlboro, Maryland 20772

KEISHA HUDSON,
  c/o Justly Prudent
16701 Melford Blvd., Suite 400
Bowie, Maryland 20715

      Plaintiff,

      v.

PRINCE GEORGE'S COUNTY, MD,
  Serve By Private Process On:
  c/o Office of Law
  1301 McCormick Drive, Suite 4100,
  Largo, Maryland 20774

AVERY JOHNSON,
  Serve By Private Process On:
  c/o Office of Law
  1301 McCormick Drive, Suite 4100,
  Largo, Maryland 20774

TAMARA JOHNSON,
  Serve By Private Process On:
  c/o Office of Law
  1301 McCormick Drive, Suite 4100,
  Largo, Maryland 20774

      Defendants.
_____/

Case No.  C-16-CV-26-001330

DEMAND FOR JURY TRIAL

## COMPLAINT FOR DISCRIMINATION

Plaintiff Keisha Grace Hudson ("Ms. Hudson"), for her complaint against Defendants

Prince George's County, Maryland (the "County"), Avery Johnson, and Tamara Johnson, alleges

the following:

1. Keisha Hudson is a correctional officer. For years, she reported to work, carried

out her duties, and served the residents of Prince George's County without incident. But when

she dared to speak up by filing a formal complaint of discrimination after a fellow officer revealed that her supervisor harbored animus toward her because of the color of her skin, the machinery of retaliation began to turn.

2.     Within days, the Department of Corrections initiated disciplinary proceedings against her for an incident that had occurred months earlier, an incident in which the individual at issue did not die on her watch. Three other officers were charged with the identical offense. All three were acquitted. Ms. Hudson alone was found guilty—by a hearing board stacked with close friends of the very supervisor she had accused of discrimination.

3.     One board member later revealed that he had voted to acquit Ms. Hudson, only to be told by the board's chairman that "his vote didn't count." Another board member was pressured to change his vote to guilty. The outcome was predetermined. The process was corrupted. And the message was unmistakable: file a complaint, and you will pay the price.

4.     Ms. Hudson brings this action to seek redress for race discrimination based on the color of her skin, sex discrimination, retaliation for engaging in protected activity, and hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, Section 1 of the Civil Rights Act of 1866, codified as 42 U.S.C. § 1981, Section 1 of the Ku Klux Klan Act of 1871, codified as 42 U.S.C. § 1983, and Maryland law.

**JURISDICTION AND VENUE**

5.     The Court has jurisdiction over this action under Md. Code Ann., Cts. & Jud. Proc. § 1-501.

6. Venue is proper in this Court under Md. Code Ann., Cts. & Jud. Proc. § 6-201 because the County carries out its governmental functions in Prince George's County and the causes of action at issue arose within Prince George's County, Maryland.

**THE PARTIES**

7. Plaintiff Keisha Grace Hudson is an African American woman and a resident of Prince George's County, Maryland. Ms. Hudson is employed by Prince George's County Department of Corrections as a Private First Class, and she is assigned to the Regional Processing Unit within the Special Operations Division.

8. Defendant Prince George's County, Maryland is a municipal corporation duly organized and existing under the laws of the State of Maryland. The County operates the Prince George's County Department of Corrections (the "Department" or "DOC"), which is located in Upper Marlboro, Maryland. The County's Charter provides that Prince George's County shall be the named party in all actions and proceedings touching its rights, powers, properties, liabilities, and duties.

9. Defendant Avery Johnson is a correctional officer employed by the Department of Corrections with the rank of Captain. Defendant Avery Johnson is sued in his individual capacity for claims arising under 42 U.S.C. § 1981. At all times relevant to this complaint, Defendant Avery Johnson served as Chairman of the Administrative Hearing Board convened to adjudicate charges against Ms. Hudson arising from the March 23, 2025 incident. Defendant Avery Johnson is a known personal friend of Defendant Tamara Johnson, the supervisor who is the subject of Ms. Hudson's formal discrimination complaint. Upon information and belief, Defendant Avery Johnson resides in Prince George's County, Maryland.

10. Defendant Tamara Johnson is a correctional officer employed by the Department of Corrections with the rank of Sergeant. Defendant Tamara Johnson is sued in her individual capacity for claims arising under 42 U.S.C. § 1981. At all times relevant to this complaint, Defendant Tamara Johnson served as a supervisor within the Regional Processing Unit and directly supervised Ms. Hudson. Upon information and belief, Defendant Tamara Johnson resides in Prince George's County, Maryland.

*Exhaustion of Administrative Remedies*

11. On or about January 24, 2026, Ms. Hudson filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), Charge No. 531-2026-01809, asserting claims of race discrimination, sex discrimination, retaliation, and hostile work environment against the County.

12. On February 6, 2026, upon Ms. Hudson's request, the EEOC issued a Determination and Notice of Rights, authorizing Ms. Hudson to file a civil action within 90 days of receipt.

13. This complaint is timely filed within the 90-day period prescribed by 42 U.S.C. § 2000e-5(f)(1).

**BACKGROUND**

14. Ms. Hudson began working at Prince George's County Department of Corrections on June 22, 2020. She is assigned to the Regional Processing Unit within the Special Operations Division, where she works Shift I (11:00 p.m. to 7:00 a.m.). While working in the Regional Processing Unit, Ms. Hudson maintained the ability to work as a correctional officer. During her tenure in the Regional Processing Unit, Ms. Hudson has received commendations for her performance.

15. Throughout her tenure with the Department, Ms. Hudson performed her duties faithfully and without material incident.

16. Defendant Tamara Johnson served as a supervisor within the Regional Processing Unit and directly supervised Ms. Hudson. Beginning in or around early 2025, Defendant Tamara Johnson engaged in a pattern of hostile and discriminatory conduct directed at Ms. Hudson.

17. On May 23, 2025, during a routine encounter in the course of their duties, Ms. Hudson questioned a directive issued by Defendant Tamara Johnson concerning the use of Ms. Hudson's full social security number. In response, Defendant Tamara Johnson physically bumped Ms. Hudson with her body. The physical contact was unprovoked and unnecessary, and it signaled a level of personal hostility that went far beyond any legitimate supervisory disagreement.

18. On June 1, 2025, Sergeant Watson, a fellow officer, informed Ms. Hudson that the unfair treatment she had been receiving from Defendant Tamara Johnson was "because [you're] light skin." Sergeant Watson made this statement in the presence of two witnesses: Sergeant Clark (badge number #970) and Corporal Harmon (badge number #1085). Sergeant Watson's statement revealed that Defendant Tamara Johnson's hostility toward Ms. Hudson was motivated by racial animus; specifically, colorism directed at Ms. Hudson on account of her light skin complexion.

19. On June 4, 2025, Ms. Hudson filed a formal written discrimination and harassment complaint against Defendant Tamara Johnson. Ms. Hudson submitted her complaint to Lieutenant Colonel Maximay (badge number #853), Captain Dixon (badge number #819), and Lieutenant Lee (badge number #837).

20. In her written complaint, Ms. Hudson documented the following: (a) the May 23, 2025 physical bumping incident; (b) the colorism-based comments relayed by Sergeant Watson regarding Defendant Tamara Johnson's discriminatory animus toward Ms. Hudson based on her light skin complexion; and (c) the ongoing pattern of hostile conduct directed at Ms. Hudson by Defendant Tamara Johnson.

21. Ms. Hudson's filing of the June 4, 2025 discrimination complaint constituted protected activity under Title VII of the Civil Rights Act of 1964, the Maryland Fair Employment Practices Act, the Prince George's County Code, and 42 U.S.C. § 1981.

22. On July 15, 2025, having received no response to her complaint in the six weeks since she submitted it, Ms. Hudson followed up with the Department's Human Resources Division. Kevin M. Easton, the Acting Chief of the Human Resources Division, confirmed that he had received Ms. Hudson's complaint and stated that he would forward it to the Office of Professional Responsibility and Legal Affairs ("OPRLA") for investigation.

### *The Retaliation Begins: The Initial Notice of Disciplinary Action*

23. On March 23, 2025, more than two months before Ms. Hudson filed her discrimination complaint, an incarcerated individual ("I/I Rouse") was brought to the Regional Processing Unit during Shift II (7:00 a.m. to 3:00 p.m.) by his arresting officer. Later that day, during Shift I (11:00 p.m. to 7:00 a.m.), Ms. Hudson and Corporal Lowery conducted an inmate count. During the count, Ms. Hudson held the door open while Cpl. Lowery entered Cell 4 to check I/I Rouse's armband and to ensure that he was safe and alive.

24. During Ms. Hudson's shift, I/I Rouse was alert, ambulatory, and communicated clearly with both the District Court Commissioner and the Panel Attorney. I/I Rouse received a bond. At no point during Ms. Hudson's shift did I/I Rouse request medical attention.

25. On July 21, 2025, just six days after Ms. Hudson's discrimination complaint was forwarded to OPRLA for investigation, Ms. Hudson received an Initial Notice of Disciplinary Action Recommendation ("IDAR") related to the March 23, 2025 incident. The charge was "Dereliction of Duty (Failure to Provide Medical Assistance)" under Prince George's County Personnel Law 16-164(a), 1 and 2.

26. The timing of the IDAR was suspicious. The incident underlying the charge had occurred nearly four months earlier, on March 23, 2025. No disciplinary action had been initiated during those four months. It was not until Ms. Hudson engaged in protected activity that the Department elected to pursue disciplinary charges against her. The temporal proximity between the referral of Ms. Hudson's discrimination complaint to OPRLA and the issuance of the IDAR gives rise to a strong inference of retaliatory motive.

*The Retaliatory Uniform Deficiency Notice*

27. On September 6, 2025, Ms. Hudson was issued a Uniform Deficiency Notice by Sergeant Bell-Riley (badge number #968) for allegedly having "bright red" hair color in violation of the Department's appearance standards.

28. Ms. Hudson had worn the same hair color for several months without incident. No supervisor and no member of the command staff had previously cited Ms. Hudson for her hair color or directed her to change it.

29. Sergeant Bell-Riley is a known personal friend of Defendant Tamara Johnson, the supervisor who is the subject of Ms. Hudson's formal discrimination complaint.

30. At the time Sergeant Bell-Riley issued the deficiency notice to Ms. Hudson, Sergeant Bell-Riley was herself wearing bright purple fingernail polish with decorative stones and blonde hair. Sergeant Bell-Riley's appearance constituted violations of the same appearance

standards she cited against Ms. Hudson. The selective enforcement of appearance standards against Ms. Hudson, by a friend of the supervisor she had accused of discrimination, constituted further retaliation.

31. Director Terence K. Clark subsequently confirmed that Ms. Hudson was not required to change her hair color, noting that at least five other officers wore red hair without being cited for uniform deficiencies. The deficiency notice was, by the Director's own implicit acknowledgment, unwarranted.

### *The Administrative Hearing Board: A Corrupted Process*

32. A three-day Administrative Hearing Board (the "Board") was convened from November 24 through November 26, 2025, to adjudicate the Dereliction of Duty charges arising from the March 23, 2025 incident.

33. Four officers were charged with the "Dereliction of Duty (Failure to Provide Medical Assistance)" offense in connection with the same incident: Ms. Hudson, a Private First Class; Corporal Lowery, a Black male; PFC Shorter, a Black male; and Lieutenant Hayes, a Black female. The Prince George's County Department of Corrections operates as a paramilitary organization with a rigid chain of command in which rank determines supervisory authority, institutional standing, and the degree of deference afforded to an officer by peers, subordinates, and command staff. The rank of Lieutenant is a commissioned supervisory rank that is substantially senior to the rank of Private First Class, and officers holding the rank of Lieutenant occupy a fundamentally different position within the Department's institutional hierarchy than officers holding the rank of PFC. The difference between these ranks is not nominal, it reflects a significant disparity in authority, seniority, and the institutional relationships that an officer maintains with other members of the command structure

34. The composition of the Board raised immediate and serious concerns. The Board was chaired by Defendant Avery Johnson, who was a known personal friend of Defendant Tamara Johnson Johnson, the subject of Ms. Hudson's discrimination complaint. Lieutenant Keyia Rodriguez, also a known friend of Defendant Tamara Johnson, served as a Board member. The remaining Board members were PFC Hall and Corporal Ogunraiyewa.

35. Of the four officers charged with the identical offense arising from the identical incident, Ms. Hudson was the only officer found guilty. Corporal Lowery, PFC Shorter, and Lieutenant Hayes were found not guilty despite having the same or greater exposure to I/I Rouse during the relevant time period.

36. The sole factor distinguishing Ms. Hudson from her co-accused officers was that Ms. Hudson had filed a formal discrimination complaint against Defendant Tamara Johnson, whose close personal friends sat in judgment of Ms. Hudson's case.

37. Ms. Hudson was the only female officer of comparable rank among the charged officers. Corporal Lowery and PFC Shorter, the two male officers who held ranks comparable to Ms. Hudson's rank, were both acquitted on the identical charge. Although Lieutenant Hayes, a female officer, was also acquitted, Lieutenant Hayes held a commissioned supervisory rank substantially senior to Ms. Hudson's and is therefore not an appropriate comparator for purposes of assessing sex-based disparate treatment. Officers holding the rank of Lieutenant occupy a different tier within the Department's paramilitary hierarchy and receive a qualitatively different degree of institutional deference from hearing board members, who themselves hold ranks within the commissioned officer structure. When the comparison is properly drawn among officers of comparable rank (i.e., Private First Class and Corporal), Ms. Hudson was the sole female officer, and she was the sole officer found guilty. The selective imposition of discipline against the only

female officer at the PFC level, while two male officers of comparable rank were acquitted on the identical charge arising from the identical incident, gives rise to an inference of sex-based discrimination.

38. Following the Board's verdict, evidence emerged that the outcome was the product of improper influence and manipulation by Defendant Avery Johnson and Lieutenant Rodriguez.

39. Corporal Ogunraiyewa, the fourth Board member, disclosed that he voted "not guilty" as to all four officers, including Ms. Hudson. Corporal Ogunraiyewa stated that Defendant Avery Johnson told him that "his vote didn't count."

40. Master Corporal Fagins, a former Union President who served as Ms. Hudson's union representative during the Board proceedings, was informed that Defendant Avery Johnson and Lieutenant Rodriguez pressured PFC Hall to change his vote to "guilty" as to Ms. Hudson.

41. On the night the verdict was rendered, Sergeant Daisy Powell independently reported to Ms. Hudson, her attorney, and union officials that during a prior Board on which she had served, "the Captains [were] pressuring her to change her position." This account corroborated the pattern of coercive conduct by Defendant Avery Johnson in Board proceedings.

42. The Board's outcome was not the product of an impartial adjudicative process, as demonstrated by the combined effect of (a) the placement of Defendant Tamara Johnson's friends in positions of judgment over the officer who had accused her of discrimination, (b) the dismissal of a dissenting board member's vote, (c) the pressure campaign to secure a guilty verdict, and (d) the singling out of Ms. Hudson as the sole officer convicted. It was an act of retaliation.

*The Final Discipline: Suspension Without Pay*

43.     On December 17, 2025, Director Terence K. Clark issued a Final Notice of Disciplinary Action against Ms. Hudson. Director Clark accepted the Board's findings and imposed the following sanction: a ten-day suspension without pay, with an additional ten days of suspension held in abeyance contingent upon Ms. Hudson not receiving any subsequent approved OPRLA investigations for a period of one year.

44.     The discipline was imposed notwithstanding that the Board process had been corrupted by the participation and coercive conduct of Defendant Avery Johnson and Lieutenant Rodriguez, and notwithstanding that the incarcerated individual did not die during Ms. Hudson's shift.

45.     During the period of suspension, Ms. Hudson was denied access to the facility, prohibited from working overtime, and prohibited from participating in any work exchange or compensatory time program.

*The Hostile Work Environment Continues*

46.     Since filing her discrimination complaint on June 4, 2025, Ms. Hudson has been subjected to a persistent and escalating pattern of harassment and hostile treatment that has fundamentally altered the terms and conditions of her employment.

47.     Defendant Tamara Johnson issued Ms. Hudson consistently negative monthly performance evaluations containing comments that Ms. Hudson "needs improvement," without providing any supervisory guidance, mentoring, or assistance to address the purported deficiencies. Ms. Hudson did not receive comparable negative evaluations prior to filing her discrimination complaint, and similarly situated officers who did not file discrimination complaints did not receive comparable evaluations from Defendant Tamara Johnson.

48. Following Ms. Hudson's formal complaint, the Department selectively enforced appearance standards against Ms. Hudson while permitting other officers to wear red or blonde hair, wear colorful nail polish, display visible tattoos, have nose piercings, and wear beards when that was prohibited. The Department did not normally issue citations or infractions based upon violations of these appearance standards.

49. Ms. Hudson was subjected to a corrupted disciplinary process in which Board members with undisclosed personal relationships to the subject of her discrimination complaint were permitted to sit in judgment of her case, and those Board members employed coercive tactics to secure a guilty verdict against her alone.

### *Post-Discipline Retaliation: Ongoing Hostile Conditions*

50. The retaliatory conduct did not cease following Ms. Hudson's suspension. On or about February 2026, the Department assigned Sergeant Bell-Riley to the Intake unit on Shift III, Ms. Hudson's work area.

51. Upon information and belief, the leadership of the Intake unit had the discretion to assign any available sergeant to the unit but chose Sergeant Bell-Riley. At the time, the leadership of the Intake unit knew that Sergeant Bell-Riley was a close associate of the supervisor Ms. Hudson had accused of discrimination, and they knew that Sergeant Bell-Riley had previously written Ms. Hudson up for wearing red hair.

52. Additionally, Sergeant Watson subsequently told Ms. Hudson to leave Regional Intake, stating that "they don't like you because you're light-skinned." Sergeant Watson is the same officer who had disclosed Defendant Tamara Johnson's colorism-based animus toward Ms. Hudson. Officer Harmon reported Sergeant Watson's statement to OPRLA and provided a truthful statement regarding Sergeant Watson's remarks.

53.     Ms. Hudson has further been informed by colleagues that certain members of the Department's leadership, including Defendant Avery Johnson, Defendant Tamara Johnson, Sergeant Bell-Riley, Lieutenant Rodriguez, Sergeant Watson, Colonel Maximay, Lieutenant Corey Thomas, and Captain Jason Grimes, are hostile toward her and that this hostility stems from her decision to file the discrimination complaint. Upon information and belief, Colonel Maximay, who oversees the Security Division and has authority over personnel assignments within Intake, has refused to make impartial assignment decisions because of his personal relationships with the individuals who are hostile toward Ms. Hudson.

54.     The Department's leadership has also indicated a desire to reassign Ms. Hudson because, in the words relayed to Ms. Hudson, she "writes too much." Ms. Hudson understood this statement to be a reference to her documented complaints of discrimination and harassment.

## HARM CAUSED

55.     As a direct and proximate result of the Defendants' wrongful conduct, Ms. Hudson has suffered and continues to suffer significant harm.

56.     Ms. Hudson was subjected to a ten-day suspension without pay, resulting in a direct loss of wages and benefits.

57.     Ms. Hudson was further subjected to an additional ten days of suspension held in abeyance for a period of one year, contingent upon her not receiving any subsequent approved OPRLA investigations. This conditional sanction operates as a continuing threat of additional punishment, chilling Ms. Hudson's willingness to report future incidents of discrimination, harassment, or misconduct and effectively penalizing her for exercising her rights.

58.     During her suspension, Ms. Hudson was denied access to the correctional facility, prohibited from working overtime, and prohibited from participating in any work exchange or

compensatory time program. These restrictions compounded her financial losses and imposed additional professional consequences beyond the suspension itself.

59.     Ms. Hudson has suffered significant emotional distress, humiliation, and mental anguish as a result of Defendants' conduct. She has endured the indignity of being singled out for punishment by a tribunal composed of her accuser's friends, while three co-accused officers walked free on the identical charge. She has been forced to continue working in an environment where the supervisors and colleagues who orchestrated her discipline remain in positions of authority over her, and where the Department's leadership has made clear that her decision to report discrimination will not be tolerated.

60.     Ms. Hudson's professional reputation within the Department has been damaged by the guilty finding and the resulting disciplinary record. The Final Notice of Disciplinary Action is now part of Ms. Hudson's permanent personnel file, where it will affect her eligibility for promotions, desirable assignments, and other career advancement opportunities for the foreseeable future.

61.     On or around February 2026, Ms. Hudson applied for a Corporal position but was informed that she was not allowed to take the Corporal test because of the incident involving I/I Rouse incident.

62.     The consistently negative performance evaluations issued by Defendant Tamara Johnson following Ms. Hudson's discrimination complaint have further damaged Ms. Hudson's professional standing and have created a documentary record that may be used to justify future adverse employment actions against her.

63.     The cumulative effect of Defendants' conduct has fundamentally altered the terms and conditions of Ms. Hudson's employment. Ms. Hudson now works in an environment

permeated by hostility, where supervisors aligned with the individual she accused of discrimination have been strategically placed in her chain of command, where her complaints are treated as insubordination rather than protected activity, and where the threat of further retaliation looms over every shift.

<u>**COUNT I**</u>
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964**
**(Against Defendant County)**

64. Ms. Hudson incorporates herein the allegations set forth in paragraphs 1 through 63, above.

65. Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from retaliating against employees who engage in certain protected activities, which include opposing unlawful discriminatory practices, making a complaint of discrimination whether through formal or informal channels, or participating in proceedings related to complaints of discrimination based on race, color, religion, sex, or national origin.

66. Ms. Hudson engaged in protected activity when she filed a formal written discrimination and harassment complaint against Defendant Tamara Johnson on June 4, 2025, opposing conduct she reasonably believed constituted unlawful race discrimination based on colorism. Ms. Hudson's complaint was forwarded to OPRLA for investigation on or about July 15, 2025.

67. Following Ms. Hudson's protected activity, the County, acting through its supervisors, officers, and agents at the Department of Corrections, subjected Ms. Hudson to a series of adverse employment actions, including: (a) the issuance of the Initial Notice of Disciplinary Action Recommendation on July 21, 2025, only six days after Ms. Hudson's complaint was forwarded to OPRLA; (b) the issuance of the retaliatory Uniform Deficiency

Notice on September 6, 2025, by a known friend of the supervisor Ms. Hudson had accused of discrimination; (c) the convening of an Administrative Hearing Board from November 24 through November 26, 2025, composed in substantial part of close personal friends of Defendant Tamara Johnson, which found Ms. Hudson guilty while acquitting three co-accused officers on the identical charge; (d) the imposition of a ten-day suspension without pay and an additional ten days held in abeyance on December 17, 2025; (e) the issuance of consistently negative performance evaluations by Defendant Tamara Johnson following Ms. Hudson's complaint; the strategic assignment of Sergeant Bell-Riley to Ms. Hudson's work area; and (f) the ongoing pattern of hostility and intimidation directed at Ms. Hudson by members of the Department's leadership.

68. Each of the adverse actions referenced in paragraph 67 would dissuade a reasonable employee in Ms. Hudson's position from engaging in protected activity under Title VII.

69. A causal connection exists between Ms. Hudson's protected activity and the adverse actions taken against her. The March 23, 2025 incident underlying the Dereliction of Duty charge occurred nearly four months before the IDAR was issued, yet no disciplinary action was initiated until six days after Ms. Hudson's discrimination complaint was referred to OPRLA. The Uniform Deficiency Notice was issued by a friend of Defendant Tamara Johnson for a hair color Ms. Hudson had worn for months without incident. The Administrative Hearing Board was chaired by a friend of Defendant Tamara Johnson who manipulated the process to secure a guilty verdict against Ms. Hudson alone. The temporal proximity between Ms. Hudson's protected activity and the adverse actions, the involvement of Defendant Tamara Johnson's associates in

each retaliatory act, and the disparate treatment of Ms. Hudson relative to her co-accused officers collectively establish a causal nexus between the protected activity and the retaliation.

70. As a direct and proximate result of the County's retaliation, Ms. Hudson has suffered and continues to suffer substantial harm.

**COUNT II**
**Discrimination in Violation of Title VII of the Civil Rights Act of 1964**
**(Against Defendant County)**

71. Ms. Hudson incorporates herein the allegations set forth in paragraphs 1 through 63, above.

72. Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin with respect to compensation, terms, conditions, or privileges of employment.

73. Ms. Hudson is a member of a protected class under Title VII based on her status as an African American woman with a light skin complexion.

74. The County, acting through its supervisors, officers, and agents at the Department of Corrections, discriminated against Ms. Hudson on the basis of her race, skin color, and sex. Defendant Tamara Johnson harbored animus toward Ms. Hudson because of her light skin complexion, a fact disclosed by Sergeant Watson to Ms. Hudson in the presence of two witnesses on June 1, 2025. This racial animus manifested in Defendant Tamara Johnson's pattern of hostile conduct toward Ms. Hudson, as referenced in paragraph 67, including the physical bumping incident on May 23, 2025, the consistently negative performance evaluations, and the mobilization of Defendant Tamara Johnson's network of personal friends to carry out retaliatory acts against Ms. Hudson after she reported the discrimination.

75. Ms. Hudson was subjected to adverse employment actions motivated by race-based animus, including the IDAR, the corrupted Administrative Hearing Board process, and the resulting suspension without pay. Three co-accused officers (Corporal Lowery, PFC Shorter, and Lieutenant Hayes) were charged with the identical offense arising from the identical incident and were found not guilty. Ms. Hudson was the only officer found guilty. Among the officers of comparable rank, Ms. Hudson was the sole female officer charged, and she was the sole officer convicted. Lieutenant Hayes, although female, held a commissioned supervisory rank substantially senior to Ms. Hudson's and occupied a qualitatively different position within the Department's institutional hierarchy, such that her acquittal does not negate the inference that sex was a motivating factor in the Board's disparate treatment of Ms. Hudson relative to the male officers of comparable rank who were acquitted on the identical charge

76. The disparate outcome is not explained by any legitimate, nondiscriminatory factor. Ms. Hudson was singled out because of her sex and because of the colorism-based animus harbored by Defendant Tamara Johnson and carried forward by her associates who occupied positions on the Board and within the Department's chain of command. The selective imposition of discipline against the sole female officer of comparable rank, while two male officers of equivalent or near-equivalent rank were acquitted, gives rise to an inference of sex-based discrimination. The acquittal of Lieutenant Hayes does not defeat this inference because Lieutenant Hayes was not similarly situated to Ms. Hudson in all material respects. Lieutenant Hayes held a supervisory rank that afforded her a different degree of institutional standing and deference within the Department's paramilitary command structure.

77. As a direct and proximate result of the County's retaliation, Ms. Hudson has suffered and continues to suffer substantial harm.

## Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964
**(Against Defendant County)**

78. Ms. Hudson incorporates herein the allegations set forth in paragraphs 1 through 63, above.

79. Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from subjecting employees to a hostile work environment based on race, color, religion, sex, or national origin.

80. Ms. Hudson has been subjected to unwelcome conduct based on her race, skin color, and sex, and in retaliation for her protected activity, that is sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive working environment.

81. The hostile conduct directed at Ms. Hudson includes both conduct motivated by racial animus and conduct motivated by retaliatory animus, which were inextricably intertwined and collectively created an abusive working environment. The conduct motivated by racial animus, specifically colorism directed at Ms. Hudson on account of her light skin complexion, includes the following: (a) Defendant Tamara Johnson's pattern of hostile and discriminatory treatment of Ms. Hudson beginning in or around early 2025, which was motivated by animus toward Ms. Hudson because of her light skin complexion, as disclosed by Sergeant Watson on June 1, 2025 in the presence of two witnesses; (b) Defendant Tamara Johnson's physical bumping of Ms. Hudson on May 23, 2025, which occurred in the context of the ongoing pattern of racially motivated hostility; (c) Defendant Tamara Johnson's issuance of consistently negative monthly performance evaluations without supervisory guidance, mentoring, or opportunity for improvement, which evaluations were not consistent with Ms. Hudson's prior performance record and were not imposed on similarly situated officers who did not share Ms. Hudson's light

skin complexion; (d) Sergeant Watson's statement to Ms. Hudson in or around February 2026 that she should leave Regional Intake because 'they don't like you because you're light-skinned,' which confirmed that the hostility directed at Ms. Hudson by members of the Department's leadership was motivated by racial animus related to her skin color; (e) the issuance of a retaliatory IDAR on July 21, 2025, six days after Ms. Hudson's discrimination complaint was forwarded to OPRLA, for an incident that had occurred nearly four months earlier without any disciplinary action being initiated; (f) the selective enforcement of appearance standards against Ms. Hudson by Sergeant Bell-Riley, a known friend of Defendant Tamara Johnson, on September 6, 2025, while Sergeant Bell-Riley herself was in violation of those same standards; (g) the convening of an Administrative Hearing Board composed in substantial part of Defendant Tamara Johnson's personal friends, who manipulated the adjudicative process to convict Ms. Hudson while acquitting three co-accused officers on the identical charge; (h) the imposition of a ten-day suspension without pay and an additional ten days held in abeyance; (i) the strategic assignment of Sergeant Bell-Riley to Ms. Hudson's work area in or around February 2026; and (j) the ongoing pattern of hostility from members of the Department's leadership, including Defendant Avery Johnson, Defendant Tamara Johnson, Sergeant Bell-Riley, Lieutenant Rodriguez, Sergeant Watson, Colonel Maximay, Lieutenant Corey Thomas, and Captain Jason Grimes, which hostility was directed at Ms. Hudson because of her decision to file a discrimination complaint. The racially motivated and retaliatory acts were not independent courses of conduct but were part of a single, coordinated campaign of hostility in which Defendant Tamara Johnson's racial animus toward Ms. Hudson provided the initial motive and Ms. Hudson's decision to oppose that discrimination provided the accelerant.

82.     Ms. Hudson subjectively perceived her work environment to be hostile, intimidating, and abusive. The cumulative weight of the racially motivated hostility from Defendant Tamara Johnson, the retaliatory discipline orchestrated by Defendant Tamara Johnson's associates, and the persistent atmosphere of hostility and intimidation caused Ms. Hudson to experience fear, anxiety, and humiliation each time she reported for duty. Ms. Hudson dreaded interactions with supervisors and colleagues whom she knew to be aligned with Defendant Tamara Johnson and hostile toward her because of her race and her decision to report discrimination. The hostile conditions fundamentally altered Ms. Hudson's experience of her employment and made it materially more difficult for her to perform her duties.

83.     The County had actual knowledge of the hostile work environment. Ms. Hudson filed a formal written complaint on June 4, 2025, which was submitted to three members of the command staff by name: Lieutenant Colonel Maximay, Captain Dixon, and Lieutenant Lee. Ms. Hudson followed up with the Acting Chief of Human Resources on July 15, 2025, who confirmed receipt. Despite this actual knowledge, the County took no remedial action to address the hostile conditions. Instead, the Department escalated the hostility through retaliatory discipline, a corrupted hearing process, and the strategic placement of Defendant Tamara Johnson's associates in supervisory positions over Ms. Hudson. The County's response to Ms. Hudson's complaint was not merely inadequate; it was itself a component of the hostile work environment.

84.     The racially motivated acts described in subparagraphs (a) through (j) were sufficiently severe and pervasive to alter the terms and conditions of Ms. Hudson's employment and to create a working environment that a reasonable person in Ms. Hudson's position would find hostile, intimidating, and abusive.

85.     As a direct and proximate result of the hostile work environment created by the County, Ms. Hudson has suffered and continues to suffer substantial harm.

## COUNT IV
### Retaliation in Violation of the Maryland Fair Employment Practices Act
### (Against Defendant County)

86.     Ms. Hudson incorporates herein the allegations set forth in paragraphs 1 through 63, above.

87.     MFEPA makes it unlawful for an employer to "discriminate or retaliate against any person because the person has opposed any practice prohibited by [MFEPA], made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [MFEPA], or exercised or enjoyed any right granted or protected by [MFEPA]."

88.     The allegations set forth in paragraphs 66 through 69, incorporated herein, also establish that the County unlawfully retaliated against Ms. Hudson, in violation of MFEPA.

89.     As a direct and proximate result of the County's wrongful conduct, Ms. Hudson has suffered and continues to suffer substantial harm.

## COUNT V
### Discrimination in Violation of the Maryland Fair Employment Practices Act
### (Against Defendant County)

90.     Ms. Hudson incorporates herein the allegations set forth in paragraphs 1 through 63, above.

91.     MFEPA makes it unlawful for an employer to "fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of the individual's race." Md. Code, State Gov't § 20-606(a)(1).

92.     The allegations set forth in paragraphs 67 and 73–76, incorporated herein, also establish that the County unlawfully discriminated against Ms. Hudson, in violation of MFEPA.

93.     As a direct and proximate result of the County's wrongful conduct, Ms. Hudson has suffered and continues to suffer substantial harm.

**COUNT VI**
**Hostile Work Environment in Violation of the Maryland Fair Employment Practices Act**
**(Against Defendant County)**

94.     Ms. Hudson incorporates herein the allegations set forth in paragraphs 1 through 63, above.

95.     The Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't § 20-606(a)(1), prohibits employers from subjecting employees to a hostile work environment based on race, color, religion, sex, or national origin.

96.     The allegations set forth in paragraphs 80 through 83, incorporated herein, also establish that the County subjected Ms. Hudson to an unlawful hostile work environment, in violation of MFEPA.

97.     As a direct and proximate result of the County's wrongful conduct, Ms. Hudson has suffered and continues to suffer substantial harm.

**COUNT VII**
**Retaliation in Violation of the Prince George's County Code § 2-209**
**(Against Defendant County)**

98.     Ms. Hudson incorporates herein the allegations set forth in paragraphs 1 through 63, above.

99.     Under Maryland law, a person that is subjected to a retaliatory act prohibited by Prince George's County Code may bring and maintain a civil action against the person that committed the alleged retaliatory act for damages, injunctive relief, or other civil relief.

100.     Section 2-209 of the Prince George's County Code prohibits an employer like the County from retaliating against employees who engage in certain protected activities, which include opposing unlawful discriminatory practices, making a complaint of discrimination whether through formal or informal channels, or participating in proceedings related to complaints of discrimination based on race, color, religion, sex, or national origin.

101.     The allegations set forth in paragraphs 66 through 69, incorporated herein, establish that the County unlawfully retaliated against Ms. Hudson, in violation of PGC Code § 2-209.

102.     As a direct and proximate result of the County's wrongful conduct, Ms. Hudson has suffered and continues to suffer substantial harm.

## COUNT VIII
### Discrimination in Violation of the Prince George's County Code § 2-222
### (Against Defendant County)

103.     Ms. Hudson incorporates herein the allegations set forth in paragraphs 1 through 63, above.

104.     Under Maryland law, a person that is subjected to a discriminatory act prohibited by Prince George's County Code may bring and maintain a civil action against the person that committed the alleged discriminatory act for damages, injunctive relief, or other civil relief.

105.     Section 2-222 of the Prince George's County Code prohibits discrimination in employment based on race, religion, color, sex, national origin, age, occupation, familial status, marital status, political opinion, personal appearance, sexual orientation, or physical or mental handicap.

106. The allegations set forth in paragraphs 67 and 73–76, incorporated herein, also establish that the County unlawfully discriminated against Ms. Hudson, in violation of PGC Code § 2-222.

107. As a direct and proximate result of the County's wrongful conduct, Ms. Hudson has suffered and continues to suffer substantial harm.

<b><u>COUNT IX</u></b><br>
<b>Hostile Work Environment in Violation of the Prince George's County Code § 2-222</b><br>
<b>(Against Defendant County)</b>

108. Ms. Hudson incorporates herein the allegations set forth in paragraphs 1 through 63, above.

109. The Prince George's County Code prohibits employers from subjecting an employee to a hostile work environment based on, among other things, the employee's race or sex.

110. The allegations set forth in paragraphs 80 through 83, incorporated herein, also establish that the County subjected Ms. Hudson to a hostile work environment based on her race and sex, in violation of PGC Code § 2-222.

111. As a direct and proximate result of the County's wrongful conduct, Ms. Hudson has suffered and continues to suffer substantial harm.

<b><u>COUNT X</u></b><br>
<b>Race Discrimination Based on Colorism in Violation of 42 U.S.C. § 1981</b><br>
<b>(Against Defendant Tamara Johnson)</b>

112. Ms. Hudson incorporates herein the allegations set forth in paragraphs 1 through 63, above.

113. Section 1 of the Civil Rights of 1866, codified as 42 U.S.C. § 1981, guarantees to all persons the same right to make and enforce contracts, including employment contracts, as is

enjoyed by white citizens. The protections of Section 1981 extend to discrimination based on race, including discrimination based on skin color and colorism.

114. Defendant Tamara Johnson personally participated in conduct that deprived Ms. Hudson of the equal benefit of her employment relationship on account of Ms. Hudson's race and skin color. Defendant Tamara Johnson harbored animus toward Ms. Hudson specifically because of Ms. Hudson's light skin complexion. This animus was disclosed by Sergeant Watson, who informed Ms. Hudson on June 1, 2025, in the presence of two witnesses, that Defendant Tamara Johnson's unfair treatment of Ms. Hudson was "because [you're] light skin."

115. Defendant Tamara Johnson's racially motivated conduct included: (a) physically bumping Ms. Hudson on May 23, 2025; (b) issuing Ms. Hudson consistently negative monthly performance evaluations without supervisory guidance or mentoring, while similarly situated officers did not receive comparable evaluations; and (c) fostering an environment of hostility toward Ms. Hudson that emboldened Defendant Tamara Johnson's associates to carry out further discriminatory and retaliatory acts against Ms. Hudson after she reported the discrimination.

116. Defendant Tamara Johnson's discriminatory treatment of Ms. Hudson impaired Ms. Hudson's ability to perform and advance in her employment. The negative performance evaluations have become part of Ms. Hudson's personnel record and will affect her eligibility for promotions and desirable assignments. The hostile conduct directed at Ms. Hudson by Defendant Tamara Johnson created conditions so intolerable that the terms and conditions of Ms. Hudson's employment were fundamentally altered.

117. Defendant Tamara Johnson's conduct was intentionally discriminatory. Her actions were motivated by racial animus directed at Ms. Hudson because of Ms. Hudson's light skin complexion, a characteristic inseparable from Ms. Hudson's race.

118.    Defendant Tamara Johnson's conduct was willful, malicious, and/or undertaken with reckless indifference to Ms. Hudson's rights.

119.    As a direct and proximate result of the wrongful actions taken by Defendant Tamara Johnson, Ms. Hudson has suffered and continues to suffer substantial harm.

**COUNT XI**
**Retaliation in Violation of 42 U.S.C. § 1981**
**(Against Defendants Avery Johnson and Tamara Johnson)**

120.    Ms. Hudson incorporates herein the allegations set forth in paragraphs 1 through 63, above.

121.    Section 1 of the Civil Rights Act of 1866, codified as 42 U.S.C. § 1981, prohibits retaliation against an individual for opposing race discrimination.

122.    Ms. Hudson engaged in protected activity when she filed a formal discrimination complaint on June 4, 2025, opposing race-based colorism directed at her by Defendant Tamara Johnson.

123.    Defendant Avery Johnson retaliated against Ms. Hudson for her protected opposition to race discrimination. With full knowledge that Ms. Hudson had accused his personal friend, Defendant Tamara Johnson, of race-based discrimination, Defendant Avery Johnson used his position as Chairman of the Administrative Hearing Board to engineer a guilty verdict against Ms. Hudson. He overrode a dissenting board member's vote, pressured another board member to change his vote, and ensured that Ms. Hudson was convicted while all other officers were acquitted.

124.    Defendant Avery Johnson's retaliatory conduct caused Ms. Hudson to suffer materially adverse consequences, including a ten-day suspension without pay, an additional ten

days held in abeyance, damage to her disciplinary record, and the stigma of being the sole officer convicted on charges from which all co-accused officers were exonerated.

125. A causal connection exists between Ms. Hudson's protected activity and Defendant Avery Johnson's retaliatory conduct. Defendant Avery Johnson's manipulation of the Board process was directed specifically at Ms. Hudson because she had accused his friend of race discrimination; it was not directed at the three other officers who had not engaged in such protected activity.

126. Defendant Avery Johnson's retaliatory conduct was willful, malicious, and/or undertaken with reckless indifference to Ms. Hudson's rights.

127. Following Ms. Hudson's protected activity, Defendant Tamara Johnson retaliated against Ms. Hudson by intensifying her pattern of hostile and discriminatory conduct. Defendant Tamara Johnson issued Ms. Hudson consistently negative performance evaluations containing criticisms that Ms. Hudson "needs improvement," without providing any supervisory guidance, mentoring, or opportunity for improvement. Upon information and belief, these negative evaluations commenced or intensified following Ms. Hudson's June 4, 2025 complaint and were not consistent with Ms. Hudson's actual job performance.

128. Defendant Tamara Johnson further retaliated against Ms. Hudson by leveraging her network of personal friends within the Department to carry out additional retaliatory acts. Sergeant Bell-Riley, a known friend of Defendant Tamara Johnson, issued the retaliatory Uniform Deficiency Notice on September 6, 2025. Defendant Avery Johnson and Lieutenant Rodriguez, both known friends of Defendant Tamara Johnson, served on the Administrative Hearing Board and manipulated the process to convict Ms. Hudson while acquitting all other officers. Each of these acts were carried out by a close associate of Defendant Tamara Johnson,

targeted Ms. Hudson specifically, and occurred in the wake of Ms. Hudson's complaint against Defendant Tamara Johnson. The coordinated nature of these acts demonstrates that Defendant Tamara Johnson was the animating force behind the retaliatory campaign.

129. A causal connection exists between Ms. Hudson's protected activity and Defendant Tamara Johnson's retaliatory conduct. Ms. Hudson's formal complaint specifically identified Defendant Tamara Johnson as the individual engaging in discriminatory conduct. The retaliatory acts that followed were directed at Ms. Hudson by Defendant Tamara Johnson herself and by Defendant Tamara Johnson's personal associates, and targeted Ms. Hudson precisely because she had opposed Defendant Tamara Johnson's race-based discrimination.

130. Defendant Tamara Johnson's retaliatory conduct was willful, malicious, and/or undertaken with reckless indifference to Ms. Hudson's rights.

131. As a direct and proximate result of retaliatory actions taken by Defendants Avery Johnson and Tamara Johnson, Ms. Hudson has suffered and continues to suffer substantial harm.

<u>**COUNT XII**</u>
**Violation of the Equal Protection Clause of the Fourteenth Amendment**
**(Against Defendant County)**

132. Ms. Hudson incorporates herein the allegations set forth in paragraphs 1 through 63, above.

133. The Fourteenth Amendment to the United States Constitution provides that no State shall deny to any person within its jurisdiction the equal protection of the laws.

134. A municipality may be held liable under 42 U.S.C. § 1983 for a constitutional violation where the violation was caused by an official policy, custom, or practice of the municipality, or where the violation was committed or ratified by an official with final policymaking authority.

135. At all times relevant to this complaint, the County, acting through the Department of Corrections, deprived Ms. Hudson of her right to equal protection of the laws by subjecting her to intentional discrimination on the basis of her race and skin color and by retaliating against her for opposing such discrimination. Specifically, the County singled Ms. Hudson out for adverse treatment, as described in paragraphs 67 and 81, while treating similarly situated officers who had not engaged in protected activity, and who did not share Ms. Hudson's skin complexion, more favorably.

136. The County's deprivation of Ms. Hudson's equal protection rights was the direct result of an official policy, custom, or practice, and the acts and decisions of final policymakers.

137. Director Terence K. Clark, as the Director of the Prince George's County Department of Corrections, is a final policymaker for the County with respect to the imposition of employee discipline within the Department. Director Clark reviewed the findings and conclusions of the Administrative Hearing Board, accepted those findings, and issued the Final Notice of Disciplinary Action against Ms. Hudson on December 17, 2025. In doing so, Director Clark exercised final, unreviewable authority on behalf of the County to impose discipline on Ms. Hudson. His decision to adopt the findings of a hearing board that was corrupted by the participation of individuals with personal relationships to the subject of Ms. Hudson's discrimination complaint, and to impose discipline on Ms. Hudson while three co-accused officers were acquitted on the identical charge, constitutes a final policymaking act attributable to the County. Upon information and belief, Director Clark was aware of the Board irregularities, the conflicts of interest, and the disparate outcome at the time he ratified the Board's findings.

138. The County's acts of its final policymakers were the moving force behind the deprivation of Ms. Hudson's constitutional right to equal protection. But for Director Clark's

ratification of the corrupted Board outcome, Ms. Hudson would not have been subjected to the discriminatory and retaliatory treatment alleged herein.

139. The County's violation of Ms. Hudson's right to equal protection was committed with deliberate indifference to her constitutional rights. The County was on notice that Ms. Hudson had reported race-based discrimination and was at risk of retaliation. Despite this knowledge, the County failed to take any steps to protect Ms. Hudson and instead allowed the retaliatory campaign to proceed and escalate. This deliberate indifference to a known risk of constitutional harm constitutes a policy or custom attributable to the County.

140. As a direct and proximate result of the County's deprivation of Ms. Hudson's right to equal protection, Ms. Hudson has suffered and continues to suffer substantial harm.

## PRAYER FOR RELIEF

Plaintiff Keisha Grace Hudson respectfully requests that the Court enter judgment on the Complaint, in favor of the Plaintiff and against Defendants Prince George's County, Maryland, Avery Johnson, and Tamara Johnson, as follows:

A. Declare that Defendants' conduct, as alleged herein, constitutes unlawful race discrimination, sex discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-601 *et seq.*, 42 U.S.C. § 1981, and the Prince George's County Code, Subtitle 2, Division 12, §§ 2-185 *et seq.*;

B. Award Ms. Hudson appropriate amounts of back pay, including all lost wages, overtime, shift differential compensation, and benefits lost as a result of Defendants' unlawful conduct, in fair and reasonable amounts to be determined at trial;

C.    Award Ms. Hudson compensatory damages for the harm she suffered as a result of Defendants' conduct, in fair and reasonable amount to be determined at trial;

D.    Award Ms. Hudson punitive damages against Defendants Avery Johnson and Tamara Johnson, in an amount that sufficiently punishes, penalizes, and/or deters their unlawful conduct;

E.    Award Ms. Hudson the costs and fees she incurred in connection with this action, including reasonable attorney fees;

F.    Order that the Final Notice of Disciplinary Action dated December 17, 2025, and the guilty finding of the Administrative Hearing Board, be expunged from Ms. Hudson's personnel file;

G.    Order that the Uniform Deficiency Notice dated September 6, 2025, and all negative performance evaluations issued by Defendant Tamara Johnson following Ms. Hudson's June 4, 2025 discrimination complaint, be expunged from Ms. Hudson's personnel file;

H.    Permanently enjoin Defendant Prince George's County, Maryland from retaliating against Ms. Hudson for exercising her rights under Title VII, the Maryland Fair Employment Practices Act, 42 U.S.C. § 1981, and the Prince George's County Code;

I.    Order Defendant Prince George's County, Maryland to implement appropriate remedial measures to prevent future discrimination and retaliation within the Department of Corrections, including the implementation of procedures to ensure that individuals with personal relationships to the subject of a discrimination complaint are disqualified from serving on Administrative Hearing Boards that adjudicate charges against the complainant; and

J.    Grant Ms. Hudson such other relief as the Court deems just and proper, including additional injunctive and declaratory relief as may be required in the interest of justice.

**DEMAND FOR JURY TRIAL**

In accordance with Maryland Rule 2-325(a), Plaintiff Keisha Hudson hereby elects a trial by jury on all issues herein triable of right by a jury.

Dated: March 6, 2026

/s/ Jordan D. Howlette
JORDAN D. HOWLETTE
MD AIS No.: 2006110003
Justly Prudent
16701 Melford Blvd., Suite 400
Bowie, MD 20715
Tel: (202) 921-6005
Fax: (202) 921-7102
jordan@justlyprudent.com
*Counsel for Plaintiff*

BM

**E-FILED; Prince George's Circuit Court**
**Docket: 3/23/2026 4:35 PM; Submission: 3/23/2026 4:35 PM**
**Envelope: 25675014**

**CIRCUIT COURT FOR** Prince George's County <u>         </u> **, MARYLAND**
City/County

Located at <u>14735 Main Street, Upper Marlboro</u>    **Case No.** <u>C-16-CV-26-001330</u>
Court Address

| | | |
|---|---|---|
| <u>Keisha Hudson</u> | vs. | <u>Prince George's County, MD, et al.</u> |
| Plaintiff | | Defendant |
| <u>c/o Justly Prudent, 16701 Melford Blvd, Ste 400</u> | | <u>1301 McCormick Drive, Suite 4100</u> |
| Address | | Address |
| <u>Bowie, MD 20715</u>   <u>(202) 921-6005</u> | | <u>Largo, MD 20774</u>   <u>(301) 952-4131</u> |
| City, State, Zip   Telephone | | City, State, Zip   Telephone |

**AFFIDAVIT OF SERVICE**
**(Certified Mail Restricted Delivery – Receipt Requested)**
**(Md. Rule 2-121)**

**NOTE:** This form provides proof to the court that copies of documents filed in the above case by one party have been delivered to the other party. Complete this form if you mailed one party's court documents to the other party. Complete ALL blanks and attach the original return receipt (green card). The court may determine that proper service was NOT made if someone other than the opposing party signs the original receipt.

On <u>March 16, 2026</u> , at <u>1301 McCormick Drive, Suite 4100, Largo, MD 20774</u> , I served, by
Date                             Address
certified mail, restricted delivery, return receipt requested, <u>PGC Office of Law</u> .
Name of opposing party

I have attached the original return receipt.

I certify that I am over the age of 18 and I am NOT the plaintiff or the defendant. I served the documents checked below.

**Check <u>all</u> that apply:**

☒ Writ of Summons <u>March 9, 2026</u>
Issue date of the summons for the complaint/petition/motion listed below

☒ Complaint/Petition/Motion <u>Complaint for Discrimination</u>
Name of complaint/petition/motion

☐ Domestic Case Information Report (form CC-DCM-001)

☐ Financial Statement

☐ Show Cause Order and Petition <u>            </u>
Type of petition

☐ Other (list all other documents served): <u>           </u>

**AFFIDAVIT**

I solemnly affirm under penalties of perjury that the contents of this document are true to the best of my knowledge, information, and belief.

<u>March 20, 2026</u>
Date

<u>Lars Kroner</u>
Printed Name

<u>16701 Melford Blvd., Suite 400</u>
Address

<u>Bowie, Maryland 20715</u>
City, State, Zip

<u>        </u>
Signature

<u>(202) 921-7558</u>
Telephone Number

<u>(202) 921-7102</u>
Fax

<u>lars@justlyprudent.com</u>
E-mail

**CC-DR-056** (Rev. 04/2021)


**UNITED STATES POSTAL SERVICE**

March 16, 2026

Dear Lars Howlette:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9436 0118 9956 1911 8386 71**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered, Left with Individual |
| **Status Date / Time:** | March 16, 2026, 10:19 am |
| **Location:** | UPPER MARLBORO, MD 20774 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail Restricted Delivery |
| | Return Receipt Electronic |
| **Recipient Name:** | PGC Office of Law |

## Shipment Details

| | |
|---|---|
| **Weight:** | 6.0oz |

## Recipient Signature

| | |
|---|---|
| Signature of Recipient: | *G R Rayson* |
| Address of Recipient: | *C1400 Perrywin* |

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

**CIRCUIT COURT FOR** Prince George's County_____, **MARYLAND**
                                                    City/County

Located at 14735 Main Street, Upper Marlboro     **Case No.** C-16-CV-26-001330
                    Court Address

Keisha Hudson_____  vs.  Prince George's County, MD, et al._____
Plaintiff                                        Defendant

c/o Justly Prudent, 16701 Melford Blvd, Ste 400   1301 McCormick Drive, Suite 4100_____
Address                                          Address

Bowie, MD 20715        (202) 921-6005      Largo, MD 20774          (301) 952-4131
City, State, Zip          Telephone        City, State, Zip            Telephone

## AFFIDAVIT OF SERVICE
### (Certified Mail Restricted Delivery – Receipt Requested)
### (Md. Rule 2-121)

**NOTE:** This form provides proof to the court that copies of documents filed in the above case by one party have been delivered to the other party. Complete this form if you mailed one party's court documents to the other party. Complete ALL blanks and attach the original return receipt (green card). The court may determine that proper service was NOT made if someone other than the opposing party signs the original receipt.

On March 16, 2026_____, at 1301 McCormick Drive, Suite 4100, Largo, MD 20774 , I served, by
              Date                              Address
certified mail, restricted delivery, return receipt requested, Avery Johnson c/o PGC Office of Law____.
                                                              Name of opposing party

I have attached the original return receipt.

I certify that I am over the age of 18 and I am NOT the plaintiff or the defendant. I served the documents checked below.

### Check all that apply:

☒ Writ of Summons March 9, 2026_____
                   Issue date of the summons for the complaint/petition/motion listed below

☒ Complaint/Petition/Motion Complaint of Discrimination_____
                            Name of complaint/petition/motion

☐ Domestic Case Information Report (form CC-DCM-001)

☐ Financial Statement

☐ Show Cause Order and Petition _____
                                        Type of petition

☐ Other (list all other documents served): _____

## AFFIDAVIT

I solemnly affirm under penalties of perjury that the contents of this document are true to the best of my knowledge, information, and belief.

March 20, 2026_____
            Date
Lars Kroner_____
        Printed Name
16701 Melford Blvd., Suite 400_____
            Address
Bowie, Maryland 20715_____
        City, State, Zip

_____
(202) 921-7558    Signature
              Telephone Number
(202) 921-7102_____
              Fax
lars@justlyprudent.com_____
              E-mail

CC-DR-056 (Rev. 04/2021)

**UNITED STATES POSTAL SERVICE**

March 16, 2026

Dear Lars Howlette:

The following is in response to your request for proof of delivery on your item with the tracking number: **9436 0118 9956 1911 8386 71**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered, Left with Individual |
| **Status Date / Time:** | March 16, 2026, 10:19 am |
| **Location:** | UPPER MARLBORO, MD 20774 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail Restricted Delivery |
| | Return Receipt Electronic |
| **Recipient Name:** | PGC Office of Law |

## Shipment Details

| | |
|---|---|
| **Weight:** | 6.0oz |

## Recipient Signature

| | |
|---|---|
| Signature of Recipient: | *[signature]* |
| Address of Recipient: | *[handwritten] 4400 Pcpxron* |

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

**CIRCUIT COURT FOR** Prince George's County _____ **, MARYLAND**
City/County

Located at 14735 Main Street, Upper Marlboro **Case No.** C-16-CV-26-001330
Court Address

Keisha Hudson _____ vs. Prince George's County, MD, et al.
Plaintiff     Defendant

c/o Justly Prudent, 16701 Melford Blvd, Ste 400     1301 McCormick Drive, Suite 4100
Address     Address

Bowie, MD 20715    (202) 921-6005     Largo, MD 20774    (301) 952-4131
City, State, Zip    Telephone     City, State, Zip    Telephone

## AFFIDAVIT OF SERVICE
### (Certified Mail Restricted Delivery – Receipt Requested)
### (Md. Rule 2-121)

**NOTE:** This form provides proof to the court that copies of documents filed in the above case by one party have been delivered to the other party. Complete this form if you mailed one party's court documents to the other party. Complete ALL blanks and attach the original return receipt (green card). The court may determine that proper service was NOT made if someone other than the opposing party signs the original receipt.

On March 16, 2026 _____, at 1301 McCormick Drive, Suite 4100, Largo, MD 20774 , I served, by
Date     Address

certified mail, restricted delivery, return receipt requested, Tamara Johnson c/o PGC Office of Law .
Name of opposing party

I have attached the original return receipt.

I certify that I am over the age of 18 and I am NOT the plaintiff or the defendant. I served the documents checked below.

### Check __all__ that apply:

☒ Writ of Summons March 9, 2026 _____
Issue date of the summons for the complaint/petition/motion listed below

☒ Complaint/Petition/Motion Complaint of Discrimination _____
Name of complaint/petition/motion

☐ Domestic Case Information Report (form CC-DCM-001)

☐ Financial Statement

☐ Show Cause Order and Petition _____
Type of petition

☐ Other (list all other documents served): _____

## AFFIDAVIT

I solemnly affirm under penalties of perjury that the contents of this document are true to the best of my knowledge, information, and belief.

March 20, 2026 _____
Date      Signature

Lars Kroner _____
Printed Name     (202) 921-7558
16701 Melford Blvd., Suite 400     Telephone Number
Address     (202) 921-7102
Bowie, Maryland 20715     Fax
City, State, Zip     lars@justlyprudent.com
    E-mail

CC-DR-056 (Rev. 04/2021)

 
March 16, 2026

Dear Lars Howlette:

The following is in response to your request for proof of delivery on your item with the tracking number: **9436 0118 9956 1911 8386 71**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered, Left with Individual |
| **Status Date / Time:** | March 16, 2026, 10:19 am |
| **Location:** | UPPER MARLBORO, MD 20774 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail Restricted Delivery |
| | Return Receipt Electronic |
| **Recipient Name:** | PGC Office of Law |

## Shipment Details

| | |
|---|---|
| **Weight:** | 6.0oz |

## Recipient Signature

| | |
|---|---|
| Signature of Recipient: | *G R Alson* |
| Address of Recipient: | *C400 Prosnion* |

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004